[Cite as *Lindsey Constr. & Design, Inc. v. Luttrell*, 2014-Ohio-1720.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| LINDSEY CONSTRUCTION & DESIGN, INC. | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| | : | Hon. Sheila G. Farmer, J. |
| Plaintiff-Appellant | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | |
| ANTHONY LUTTRELL, ET AL. | : | Case No. 2014CA00006 |
| | : | |
| Defendants-Appellees | : | O P I N I O N |


CHARACTER OF PROCEEDING:       Appeal from the Court of Common
                               Pleas, Case No. 2013CV01747


JUDGMENT:                      Affirmed


DATE OF JUDGMENT:              April 21, 2014


APPEARANCES:

For Plaintiff-Appellant                    For Defendants-Appellees

ROBERT E. SOLES, JR.                       CHRISTOPHER A. MARUCA
KARA DODSON                                ANTHONY CELO
FAITH DYLEWSKI                             201 East Commerce Street
KEVIN COX                                  Suite 316
6545 Market Avenue North                   Youngstown, OH  44503
North Canton, OH  44721

*Farmer, J.*

{¶1} Appellant, Lindsey Construction & Design, Inc., is a general construction contractor company. On February 7, 2012, appellant hired appellee, Anthony Luttrell, as a general manager. Appellee signed a noncompetition agreement, agreeing not to compete with appellant for a two year period within one hundred miles of appellant's principal place of business if appellant was terminated from employment.

{¶2} In March 2012, appellee, on behalf of appellant, hired Timothy Waggoner to work as a sales agent. He signed an independent contractor agreement and an addendum containing a noncompetition clause.

{¶3} In May 2012, appellee hired Stephen Carouthers to work as a sales agent. He too signed an independent contractor agreement however, there is no evidence that he ever signed an addendum containing a noncompetition clause. Mr. Carouthers left appellant's employ three months later, in August 2012.

{¶4} In March 2013, while still working for appellant, appellee formed Avaran Management Group, LLC, and Mr. Carouthers formed Carouthers Management & Consulting, LLC. Both of these companies are members of the Ohio limited liability company, Falcon General Contractors, LLC. Falcon is in the construction and remodeling business.

{¶5} On April 2, 2013, Mr. Waggoner resigned his position with appellant and began employment with Falcon. Appellee also resigned at about this same time.

{¶6} On June 28, 2013, appellant filed a complaint against all the aforementioned parties. Appellant alleged breach of restrictive covenant, breach of fiduciary duty, breach of contract, unfair competition, intentional interference with

prospective economic advantage, misappropriation of confidential business information, and breach of note. Appellant sought a preliminary injunction to enjoin the parties from continuing to engage in conduct that caused the breach. A hearing before a magistrate was held on August 1, 2013. By decision filed August 27, 2013, the magistrate denied the injunction. Appellant filed objections. By judgment entry filed December 13, 2013, the trial court denied the objections and adopted the magistrate's decision.

{¶7} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶8} "IT WAS REVERSIBLE ERROR FOR THE TRIAL COURT TO FAIL TO ENFORCE THE CLEAR TERMS OF THE NONCOMPETITION AGREEMENT TO THE EXTENT NECESSARY TO PROTECT THE LEGITIMATE INTERESTS OF APPELLANT."

II

{¶9} "THE TRIAL COURT ABUSED ITS DISCRETION WITH RESPECT TO ITS FINDING THAT APPELLANT SOUGHT TO PREVENT ONLY ORDINARY COMPETITION."

III

{¶10} "THE TRIAL COURT ERRED IN FINDING THAT PLAINTIFF WAS NOT LIKELY TO SUCCEED ON THE MERITS, BECAUSE LUTTRELL ADMITTEDLY BREACHED THE NONCOMPETITION AGREEMENT."

IV

{¶11} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING THAT PLAINTIFF WILL NOT SUFFER IRREPARABLE HARM IN THE ABSENCE OF INJUNCTIVE RELIEF."

V

{¶12} "THE TRIAL COURT APPLIED THE INCORRECT STANDARD WHEN IT CONCLUDED THAT THIRD PARTIES WOULD BE HARMED WITHOUT BALANCING THE HARM TO ALL PARTIES."

{¶13} Prior to discussing appellant's assignments of error, a procedural issue must be addressed.

{¶14} First, as conceded by appellant in its brief at 4, fn.1, the trial court's decision relative to Timothy Waggoner is moot because he no longer works for Falcon and is no longer violating the terms of the agreement.

{¶15} Secondly, each of appellant's assignments of error argue only the enforceability of the agreement relative to Anthony Luttrell.  No citations in the brief refer to Stephen Carouthers.  Mr. Carouthers was employed by appellant for three months and he resigned in August 2012.  T. at 132.  There is nothing in evidence to establish that he ever signed an addendum containing a noncompetition clause.  T. at 38-39. There are no references or agreements relative to Mr. Carouthers included in the assignments of error.

{¶16} Accordingly, we dismiss the appeal as it pertains to Mr. Waggoner and Mr. Carouthers.

I, II, III, IV, V

{¶17} Appellant challenges the trial court's decision in denying the preliminary injunction request against appellee Luttrell. We disagree.

{¶18} The decision to grant or deny an injunction is within the trial court's sound discretion. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217 (1983).

{¶19} A party requesting a preliminary injunction must show: (1) there is a substantial likelihood that the plaintiff will prevail on the merits; (2) the plaintiff will suffer irreparable injury if the injunction is not granted; (3) no third parties will be unjustifiably harmed if the injunction is granted, and (4) the public interest will be served by the injunction. *Procter & Gamble Co. v. Stoneham,* 140 Ohio App.3d 260 (2000).

{¶20} In the magistrate's August 27, 2013 decision, adopted by the trial court in its judgment entry filed December 13, 2013, the trial court concluded the evidence failed to establish any loss of jobs to Falcon, the noncompetition contract was overbroad, and there was no proof of irreparable harm to appellant or no harm to third parties. The trial court concluded the following:

> Upon review, the Court finds that Plaintiff has not established, by clear and convincing evidence, that there is a substantial likelihood that it will prevail on the merits of the underlying substantive claim or that they would suffer irreparable harm if the injunction is not granted. Additionally, the Court finds that the issuance of the injunction will harm third parties,

and that the public interest would not be served by issuing the preliminary injunction.

{¶21} The noncompetition agreement between appellant and appellee, attached to the June 28, 2013 complaint as Exhibit B, contains the following provision in pertinent part:

3. **Non-Competition**. Employee (or a member of Employee's immediate family) shall not:

b) for a period of two (2) years after the Termination Date, regardless of how said termination may have occurred, directly or indirectly, own, manage, operate, control, accept employment or a consulting position with, or otherwise advise or assist or be connected with in any way, directly or indirectly, any individual and/or entity which engages in or otherwise carries on any business activity which in any way competes with the Business or which carries on activities substantially similar to the Business anywhere within a one hundred (100) mile radius of the principal office of the Business (the "Territory").

{¶22} In *Raimonde v. Van Vlerah,* 42 Ohio St.2d 21 (1975), paragraphs one and two of the syllabus, the Supreme Court of Ohio held the following:

1. A covenant not to compete which imposes unreasonable restrictions upon an employee will be enforced to the extent necessary to protect an employer's legitimate interests. (Paragraphs two and three of the syllabus in *Extine v. Williamson Midwest,* 176 Ohio St. 403, overruled.)

2. A covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if the restraint is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public.

{¶23} The *Raimonde* court at 25 further explained the factors to be considered:

Among the factors properly to be considered are: "[t]he absence or presence of limitations as to time and space, * * * whether the employee represents the sole contact with the customer; whether the employee is possessed with confidential information or trade secrets; whether the covenant seeks to eliminate competition which would be unfair to the employer or merely seeks to eliminate ordinary competition; whether the covenant seeks to stifle the inherent skill and experience of the employee; whether the benefit to the employer is disproportional to the detriment to the employee; whether the covenant operates as a bar to the employee's sole means of support; whether the employee's talent which the employer seeks to suppress was actually developed during the period of

employment; and whether the forbidden employment is merely incidental to the main employment." *Extine, supra,* at 406. See *Arthur Murray Dance Studios of Cleveland v. Witter* (1952), 62 Ohio Law Abs. 17.

{¶24} Appellant is a construction company whose focus is insurance restoration and reconstruction work involving residential and commercial properties. T. at 17. Appellant does general contracting, roofing, siding, windows, additions, remodels, and water restoration. *Id.* Appellant's office is located in Akron, Ohio and the 100 mile radius basically covers northeastern Ohio. T. at 18. Most of appellant's customers were one-time customers. T. at 54, 241.

{¶25} Appellee originally started working for appellant in 2010 as an independent contractor salesperson. T. at 222. In 2012, appellee was hired as an employee, becoming general manager and reporting directly to the owner of the company. T. at 33. Appellee established strong business relationships with appellant's customers, subcontractors, and suppliers. T. at 184-186. During the course of his employment with appellant, appellee was demoted from general manager to sales manager, but he was still regarded as the No. 2 man. T. at 225, 228.

{¶26} In 2013, while still working for appellant, appellee formed Avaran to satisfy the IRS because he was simultaneously receiving a W-2 and a 1099 while working for appellant. T. at 183, 223-224, 231. Appellee admitted he was the owner of Falcon. T. at 184. Falcon is a full service general contractor company specializing in new home construction, but also works on roofing, siding, storm damage claims, water mitigation, kitchen remodeling, deck projects, and window renovations. T. at 176, 235-237.

Although appellee disagreed that his new business competed with appellant's (T. at 173), the trial court concluded that in reviewing the respective websites, the companies engaged in substantially similar construction work.  Appellee claimed he was not in the insurance restoration business like appellant, but he did solicit storm damage work and roofing and siding work as appellant did.  T. at 174-176, 232.  Appellee admitted he was doing business within the 100 mile range (Mineral City/Tallmadge).  T. at 174, 176.  It was appellee's position that the noncompetition agreement was overbroad in terms of time and geography.  Appellee also argued there was no proof of irreparable harm to appellant and there would be harm to third parties.

{¶27}  The testimony establishes only two remodel jobs by Falcon were in Stark County, with the large amount of Falcon's work in Mahoning and Columbiana Counties.  T. at 236-237.  The 100 mile geographical area extends to the northeastern Ohio region of approximately four million people according to the U.S. Census, and is the fourteenth largest metropolitan area in the United States.

{¶28}  In its complaint filed June 28, 2013, appellant requested a preliminary injunction for strict enforcement of the 100 mile geographic limit, although the noncompetition agreement at ¶ 9 permitted modifications to the jurisdictional restrictions:

> 9. Jurisdictional Interpretation. If any court or other tribunal having jurisdiction to determine the validity or enforceability of Sections 2, 3 or 4 herein, determines that strictly applied, such provision(s) would be invalid or unenforceable, the, in such event, the scope, time and, if applicable,

geographical provisions of said Section(s) shall be deemed modified to the extent necessary (but only to that extent) so that the restrictions in said Sections, as modified, will be valid and enforceable.

{¶29} We concur with the trial court's decision that the language of the noncompetition agreement is excessive and overbroad, and given appellee's testimony, Falcon does less than one percent of its business in appellant's major service area. Also, no proof was presented of any direct solicitation of appellant's customers or business leading to any possibility of a claim of irreparable harm.

{¶30} Upon review, we find the trial court correctly denied the preliminary injunction as the noncompetition agreement was geographically overbroad, there was no likelihood of success on the merits and of irreparable harm to appellant, and there was the possibility of unjustifiable harm to third parties.

{¶31} Assignments of Error I, II, III, IV, and V are denied.

{¶32} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.

By Farmer, J.

Hoffman, P.J. and

Baldwin, J. concur.

SGF/sg 401